IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RANDALL L. BANKS, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:08-CV-045-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Randall L. Banks, TDCJ-ID #1084188, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Beaumont, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

On January 22, 2002, a jury found Banks guilty of one count of aggravated sexual assault of a child younger than 14 years of age and assessed his punishment at 25 years' confinement in Case No. 0810257D in the 372nd District Court of Tarrant Count, Texas. (Clerk's R. at 35) The state appellate court summarized the facts of the case as follows:

> During the guilt/innocence phase of Appellant's trial, the State presented the testimony of the victim C.H.; Child Protective Services ("CPS") investigator Amy Olson; Detective Clayton Hays; Stephanie Davis, who was C.H.'s fourth grade teacher; Dr. Jamye Coffman, the medical director for the child abuse program at Cook Children's Medical Center; and Laura Greuner, who is a licensed therapist. C.H. testified that, one night during the summer of 2000, she wanted to buy some candy from a woman living at her apartment complex, so she went to Appellant's apartment to ask him for a dollar. She went inside Appellant's apartment, knocked on his bedroom door, and entered. C.H. testified that as she approached Appellant, he picked her up, flipped her over, and placed her on his bed.
>
> C.H. testified and demonstrated with anatomically correct dolls that Appellant stood behind her, pulled her pants and panties down, and placed his hands on her back. C.H. said that she was screaming and telling him to quit, but that Appellant would not let her up. Rather, C.H. said that Appellant touched her "middle spot." C.H. stated that she did not know what he was touching her with, but that Appellant was standing right behind her, his pants were off, and something dry and soft went between her legs to touch her "middle spot." C.H. testified that it hurt.
>
> C.H. testified that after Appellant touched her, one of her friends came inside Appellant's apartment asking what was taking her so long. C.H. testified that Appellant told her to pull up her pants, and that when she turned around to face him, his shirt was untucked. According to C.H., Appellant told her not to tell anyone about what had occurred because it was their "little secret." C.H. said that she was scared to tell anyone because she thought she might get in trouble. Eventually, C.H. told her mother and grandmother, but they did not contact the police. C.H. later told her teacher, Ms. Davis, and the school counselor about the assault.
>
> As a result of the conversations between C.H. and school officials, CPS was contacted, and Ms. Olson interviewed C.H. During the course of her investigation, Ms. Olson contacted the police. Detective Hays investigated the incident and interviewed C.H. Detective Hays testified that C.H. told him that during the

summertime Appellant had pushed her onto his bed, pulled her pants and underwear down, and had forced something into her vagina, which C.H. described to Detective Hays as her middle part. According to Detective Hays, while C.H. was not sure what Appellant had touched her with, she told him that the contact hurt and that when Appellant was finished, she saw him zipping up his pants.

In March 2001, Dr. Coffman examined C.H. in the presence of Ms. Olson and a colleague at the hospital. Dr. Coffman testified that C.H. told them that Appellant pulled down her pants and that she thought he put his middle part in her middle part because he was zipping up his pants when he stood up. According to Dr. Coffman, when asked to clarify her meaning as to what the middle parts were, C.H. responded by pointing to her genitalia and by spelling D I C K. Further, Dr. Coffman testified that the hospital has a specific checklist concerning different types of sexual contact, which they go over with victims of sexual assault. In going through the checklist, C.H. was asked about vaginal contact, and Dr. Coffman said that, in response to the questioning, C.H. described penile contact. Dr. Coffman also testified that while C.H. showed no signs of trauma during a physical sexual assault exam, penile penetration without trauma was possible and, even if there was trauma, it could have healed with no signs, such as scarring.

*Banks*, 2003 WL 360758, at *1-2.

The state appellate court affirmed the trial court's judgment and, after allowing Banks to file an out-of-time petition for discretionary review, the Texas Court of Criminal Appeals refused the petition on August 31, 2005. *Barks v. Texas*, No. 2-02-028-CR (Tex. App.–Fort Worth Feb. 20, 2003) (not designated for publication); *Barks v. Texas*, PDR No. 313-05. Banks filed a state application for writ of habeas corpus raising the claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals on October 31, 2007. *Ex parte Banks*, No. WR-50,792-03, at cover. This federal petition followed. The petition was originally dismissed on limitations grounds, however the Fifth Circuit Court of Appeals vacated the judgment of dismissal and remanded the case to this court in light of the Supreme Court's decision in *Jimenez v. Quarterman*, 555 U.S. 113 (2009). Respondent, Rick Thaler, has filed an answer addressing the merits of petitioner's claims, to which Banks filed a reply.

## D. ISSUES

Banks raises four grounds for relief, in which he claims that he received ineffective assistance of counsel at trial and on appeal (grounds one and four) and that the evidence is legally and factually insufficient to support his conviction (grounds two and three). (Pet. at 7-8)

## E. RULE 5 STATEMENT

Respondent asserts that Banks has sufficiently exhausted his state court remedies on the claims presented and that the petition is not barred by limitations or subject to the successive-petition bar. (Resp't Ans. at 5)

## G. DISCUSSION

### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S.

4

at 407-08. Further, the statute requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. Sufficiency of the Evidence

Banks claims the evidence was legally and factually insufficient to support his conviction. A claim challenging the factual sufficiency of the evidence is not cognizable on federal habeas review. For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005). The inquiry in a legal-sufficiency analysis requires only that a reviewing court determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. This standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998). In conducting a *Jackson*

review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). Where a state appellate court has conducted a thoughtful review of the evidence, as in this case, its determination is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

Count one of the indictment, upon which Banks was convicted, alleges that Banks "did intentionally or knowingly cause the sexual organ of C.H., a child younger than 14 years of age . . . to contact the sexual organ of" Banks. TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon Supp. 2010). Based on the evidence set forth above, the state appellate court, applying the *Jackson* standard, held the evidence was legally sufficient to support the jury's verdict. *Banks*, 2003 WL 360758, at *3. Banks claims, however, that the appellate court misrepresented the facts by stating that the victim testified Banks "was standing right behind her, *his pants were off*, and something dry and soft went between her legs to touch her "middle spot." There was no evidence that the victim saw Banks with his pants off. Thus, Banks argues the evidence was legally insufficient for the jury to reasonably infer that the "something" was his penis. (Pet. at 7; Pet'r Mem. at 21)

The state habeas judge, who also presided over the trial, entered the following relevant facts on the issue:

14. The Court of Appeals discussed that the victim had testified that Applicant's pants were off when he was standing behind her.

15. There is no evidence that the victim testified that she saw Applicant's pants off.
. . .

17. The victim testified that Applicant got "right behind" her and pulled down her pants and panties.

18. The victim testified that applicant went between the victim's legs and touched her female organ.

19. The victim testified that she wasn't sure what Applicant touched her female organ with but at other times she indicated that Applicant's penis touched her female organ.

20. The victim testified that when Applicant let her go his shirt was untucked from his pants when it had been tucked in before.

21. Dr. Coffman testified that the victim advised that she thought Applicant had used his penis because she saw Applicant zipping up his pants after he was done.

22. The Second Court of Appeals considered evidence that Applicant used his penis to touch the victim's sexual organ besides the fact that Applicant's "pants were off."

(State Habeas R. at 166) (citations omitted)

Based on its findings, the habeas court concluded there was evidence that Banks had unzipped his pants and untucked his shirt in the process of sexually assaulting the victim, that Banks used his penis to sexually assault the victim, and that whether the victim testified that she saw Banks's pants off was not the only fact considered by the appellate court when determining that the evidence was sufficient to support Banks's conviction. (*Id.* at 169-70) Adopting the trial court's findings, the Texas Court of Criminal Appeals also rejected Banks's claim.

The state courts' adjudication of the claim is not contrary to, or an unreasonable application of, *Jackson* nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court. Thus, the state court's determination is entitled to the appropriate deference and the presumption of correctness. Furthermore, it is the jury's, not an appellate court's, unique role to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *Tibbs v. Florida*, 457 U.S. 31,

45 n.21 (1982); *United States v. Millsaps*, 157 F.3d 989, 994 (5ᵗʰ Cir. 2009). A reviewing court must draw all reasonable inferences in favor of the jury's verdict. *United States v. Gulley*, 526 f.3d 809, 816 (5ᵗʰ Cir. 2008). Although the appellate court's statement that Banks's "pants were off" may have misrepresented the victim's testimony, C.H. did testify that Banks's "pants fell off." (RR, vol. 3, at 145) This, in conjunction with the other evidence adduced at trial, was sufficient for the jury to reasonably infer that Banks contacted C.H.'s sexual organ with his sexual organ.

### 3. Ineffective Assistance of Counsel

Banks claims he received ineffective assistance of counsel at trial and on appeal. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5ᵗʰ Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel an applicant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where an applicant's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted

only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Banks was represented at trial by Leon Haley Jr. and Edward G. Jones and on appeal by Haley. The state habeas court conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting Banks's ineffective-assistance claims. (State Habeas R. at 178-82) Applying the *Strickland* attorney-performance standard to its factual findings, the state habeas court concluded Banks had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts of misconduct, the result of his trial or appeal would have been different. (*Id.* at 185-89) Banks has failed to rebut the findings of fact by clear and convincing evidence, therefore the court defers to those findings.

Banks claims his appellate counsel was ineffective by failing to file an adequate brief. According to Banks, "[c]ounsel filed a brief which did not present argument nor authorities on the points of error identified in the brief's summary section. Counsel used only two sentences of his 16 page brief to discuss the issues presented. As a result, Petitioner was denied the ability to present his sufficiency issues under the standard of review on direct appeal." (Pet. at 8) In appellant's brief, counsel raised two issues, challenging the legal and factual sufficiency of the evidence. Banks asserts counsel included "legally incorrect, irrelevant and nonsensical" arguments in the brief, failed to cite to the record and to legal authority, and failed to employ corrective measures to correct the appellate court's misstatement of the facts. (Pet'r Reply at 14-21) In response, counsel indicated in his affidavit that the issue was for the court to decide, and that he "raised and discussed the issues as I saw them." (State Habeas R. at 109)

The state habeas entered the following relevant findings of fact on the issue:

8. Hon. Haley presented two sufficiency of the evidence issues in his brief.

9. The Second Court of Appeals considered Hon. Haley's brief on the merits.

10. Applicant presents no evidence that Hon. Haley's brief was deemed inadequate.

11. Applicant presents no evidence that Applicant was harmed by Hon. Haley's brief.

12. The Second Court of Appeals considered Hon. Haley's brief on the merits.

13. The Second Court of Appeals did not deem that Hon. Haley's brief was inadequate or improper.

. . .

16. There is no evidence that Hon. Haley contacted the Court of Appeals to correct any misinterpretation of the facts by the Court of Appeals.

. . .

23. Applicant presents no evidence to support his claim that he was harmed by his attorney's failure to contact the Court of Appeals and advise them that the victim did not testify that Applicant's pants were off.

(*Id.* at 165-66) (citations omitted)

Based on its findings, the state court concluded Banks had failed to prove counsel's representation fell below an objective standard of reasonableness or that he was harmed by counsel's brief or his failure to correct the appellate court's misstatement of the facts. (*Id.* at 169-70) Banks has failed to present convincing evidence or compelling argument to rebut the presumption of correctness of the state court's factual findings. Thus, applying the presumption of correctness, the state courts' denial of the claims is not contrary to, or involve an unreasonable application of *Strickland*. Appellate counsel is not required to raise every conceivable argument urged by his client

on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). A petitioner must show that appellate counsel's failure to raise an issue, or adequately brief an issue, worked to his prejudice–*i.e.*, that but for counsel's omission he would have prevailed on his appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991). As determined by the state habeas court, Banks has not satisfied this requirement. Banks has not shown that the appellate court failed to consider the issues raised in the brief due to inadequate briefing nor has he identified any potentially meritorious points of error that his appellate counsel could or should have included as a part of his appellate brief.

Banks claims his trial counsel was ineffective by (1) failing to properly object to multiple levels of hearsay during the testimony of Dr. Jamye Coffman, the medical director for the child abuse program at Cook Children's Medical Center, (2) failing to properly object to the inadmissible testimony of Laura Gruner, C.H.'s therapist, (3) introducing the highly damaging, prejudicial, and otherwise inadmissible hearsay testimony of Julie Samora, C.H.'s grandmother, and (4) introducing the videotape of C.H.'s interview with CPS, which was more prejudicial than probative. (Pet'r Reply at 1) In response to the allegations, counsel Haley stated as follows:

> In representing Mr. Banks, in the several conversations we had in preparing for his trial regarding possible defenses, he was advised that on several occasions that it was my opinion that the State was not going to bring the victim either because they could not find the victim or because they felt they did not need the victim. He and I then decided that we would not cause someone to testify, that would be harmful to our case. As a result of this we went to trial and during the trial the State chose not to bring the victim and we objected to that as a violation of the confrontation clause. The court overruled that and we proceeded to trial, those issues were challenged on appeal, we further challenged the sufficiency of the evidence also on appeal. My position along with Mr. Banks has always been the same and that is the State did not have a case without our ability to test the credibility of the victim and the case should

11

have been dismissed. I explained to Mr. Banks that if we proceeded in the manner that the Judge may possibly rule against us but our best chance in winning the case would be in bringing the victim based upon our conversations about what happened.

In the course of our defense there was a video testimony of what had happened and I had informed my client that I thought it was in his best interest that we play the tape to discredit the victim's testimony. We wanted to show the contradictions, and the tape[] was our only option short of him testifying. Co-counsel Ed Jones and I gave him two different approaches, one was to introduce the tape as I had advised[,] the other was not to introduce the tape and leave her statement as presented by the State[.] [A]fter talking to both counsels Mr. Banks chose to go with introducing the tape; however we chose to introduce the tape.

In preparing for trial I reviewed all the evidence that was presented days before Voir Dire examination began. Mr. Banks to my recollection was fully involved in the determination of which jurors should not be struck and the use of peremptory challenges. Based upon my representation of Mr. Banks he was fully aware and understood and directed his defense.

I explained to Mr. Banks that we needed to demonstrate to the Jury the child's mental state, show how she continues to change[] her story and show as many inconsistent statements as possible. To do this we had to solicit from the witnesses as much information as possible to present to the jury. This was the strategy and approach that we felt was in his best interest for his defense. As oppose[d] to objecting to every objectionable statement and possibly causing the jury to believe we were hiding evidence.

Mr. Banks complains now about the testimony of Dr. Jamye Coffman[] and Laura Greuner, but we would have called them had the State of Texas not called them to testify, therefore, qualifications would not have been an issue. I made it clear to Mr. Banks that if we played it safe in not challenging the little girl[,] a jury might take her statements at face value. The objectives were to show her mental state and to show that she was a problem child. Mr. Banks wanted me to go all out in attempt to discredit the little girl by showing all of her inconsistencies and that is what we tried to do.

(State Habeas R. at 108-09)

Counsel Jones testified, in relevant part, as follows:

Mr. Leon Haley, Jr. asked me to sit as a second chair assistant three or four days prior to Jury Trial commencing.... A major issue that occurred at trial was the admission by the court of the video taped interview of the alleged victim by state

personnel regarding the alleged crime. To the best of my recollection many statements on this video taped interview were inconsistent with the alleged victim's testimony at trial and statements to others prior to trial. These inconsistent statements were important to show the jury that the alleged victim was not creditable [sic] and thus the alleged sexual assault was a fabrication. Mr. Haley and I discussed at length with Mr. Banks the importance of having these inconsistent statements presented to the jury to attack the creditable [sic] of the alleged victim and therefore show that the alleged sexual assault was a fabrication. To the best of my recollection Mr. Haley cross examined the witnesses regarding these inconsistencies without the use or the introduction into evidence of the video taped interview. The state then claimed that they would move for admission into evidence of the entire video taped interview due to the rule of optional completeness. The court advised Mr. Haley that he would allow the introduction of the video tape into evidence even though Mr. Haley and I objected that the door had not been opened to statements on the video taped interview except for the ones that were inconsistent because Mr. Haley had limited his cross examination solely to the inconsistent statements themselves. Upon the court notifying Mr. Haley that it would allow the video taped interview into evidence Mr. Haley introduced it into evidence as a defendant's exhibit so as not to leave the jury with the impression that he as attempting to hide evidence from them. Mr. Haley as attorney of record asked my opinion regarding the strategy of attempting to introduce important inconsistent statements while attempting to exclude certain prejudicial evidence which may have included on the video taped interview. I offered my opinion but as a second chair assistant it was not my decision and I told Mr. Haley that obviously . . . it was his and Mr. Banks['] ultimate decision as to how to strategically introduce the evidence before the jury. To the best of my recollection Mr. Banks was included in all the discussions regarding how to approach the problem of admitting inconsistent statements to attack the creditably [sic] of the alleged victim while attempting to limit any prejudicial and irrelevant evidence.

I believe the court erred in allowing or in claiming that it would allow the video taped interview because I believe Mr. Haley did not open the door to all statements on the video taped interview because Mr. Haley limited his cross examination solely to the prior inconsistence [sic] statements made to the interviewer without the introduction of the video tape. Mr. Haley in his closing arguments related to the jury my opinion as to whether he should have admitted the video taped interview into evidence as saying that "he (Mr. Haley) wanted the video in. My young co-counsel didn't. My position is I don't care about all that stuff[.] I want you to see all this stuff." As second chair and just an assistant in trial it was not my decision what strategy should be used in defending Mr. Banks. I was there solely as an assistant to Mr. Haley.

(*Id.* at 111-13)

13

Based on counsel's testimony, the state habeas court entered the following relevant findings of fact:

30. Hon. Haley and Applicant had several conversations about possible defenses.

31. Hon. Haley and Hon. Jones discussed the videotape at length with Applicant and the importance of using it as impeachment evidence to show the inconsistencies in the victim's numerous statements.

32. Hon. Haley attempted to only have the admission of the inconsistent statements; however, the trial court advised that he would allow the entire videotape into evidence if Hon. Haley admitted the inconsistent statements.

33. The State advised Hon. Haley that it would have the videotape admitted if Hon. Haley admitted the inconsistent statements due to the rule of optional completeness.

34. Once Hon. Haley learned that the entire videotape was coming in, Hon. Haley chose to introduce it into evidence so as to not leave the jury with the impression that he was trying to hide something.

35. Hon. Haley made a strategic decision to have the videotape entered into evidence so that the jury could view the inconsistent statements made by the victim.

36. The inconsistent statements were important to attack the credibility of the victim and show that the alleged assault was a fabrication.

37. Hon. Haley wanted to demonstrate the contradictions in the victim's statements and the tape was the only option except for Applicant to testify.

38. Hon. Haley decided that introducing the videotape was the best option.

39. Hon. Haley advised Applicant that they needed to demonstrate the victim's mental state and how her statements were not credible.

40. Hon. Haley advised Applicant that he needed to show the jury as many different inconsistent statements as possible.

41. To show the inconsistent statements, Hon. Haley chose to solicit from the witnesses as much information as possible to present to the jury.

42. It was Hon. Haley's trial strategy not to object to every questionable statement because he did not want the jury to believe they were hiding anything.

43. Hon. Haley would have called Dr. Coffman and Laura Greuner to testify had the State not called them so he did not take issue with their qualifications.

44. Hon. Haley advised Applicant that the jury may take the victim's statements at face value if Hon. Haley did not challenge them.

45. Hon. Haley's trial strategy was to show the victim's mental state and show she was a "problem child."

46. Hon. Haley recalls that Applicant wanted him to "go all out" to show the inconsistencies and discredit the victim.

47. Hon. Haley advised the jury that his trial strategy is to not hide anything from the jury and allow them to see all of the evidence.

48. Hon. Haley's decisions were pursuant to trial strategy.

(*Id.* at 167-68) (citations omitted)

Based on its findings, the state court concluded counsel's acts or omissions were the result of reasonable trial strategy. (*Id.* at 170-71). Banks has failed to present convincing evidence or compelling argument to rebut the presumption of correctness of the state court's factual findings. Thus, applying the presumption of correctness, the state courts' denial of the claims is not contrary to, or involve an unreasonable application of *Strickland.*

The testimony of Dr. Coffman was admissible under the state-law hearsay exception as statements for purposes of medical diagnosis or treatment. TEX. R. EVID. 803(4). Counsel is not required to make frivolous objections. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). The record refutes Banks' assertion that counsel failed to properly object to Laura Greuner's testimony. (RR, vol. 4, at 48-81) Counsel lodged numerous relevant objections during the state's direct-

examination of Greuner, the victim's therapist, and thoroughly questioned Greuner on cross-examination. (*Id.* at 84-105) Further, counsel's decision regarding which witnesses to call, what type of impeachment to undertake, and what basic strategy to adopt are matters within counsel's range of discretion and are virtually unchallengeable on federal habeas review. Counsel's decisions to call Samora, C.H.'s grandmother, to establish that C.H.'s mother had left C.H. with men Samora did not approve of and to introduce the videotape to show inconsistencies in C.H.'s testimony and create the appearance that the defense was not trying to hide something from the jury were within the realm of reasonable trail strategy. *See Mosely v. Quarterman*, 306 Fed. Appx. 40, 2008 WL 5381299, at *7 (5th Cir. Dec. 23, 2008) (not designated for publication).

## II. RECOMMENDATION

Banks's petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until May 9, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until May 9, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April __18__, 2011.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE